**Shearer Estate**

*Peter E. Blystone,* for administrator.

*Paul D. Shafer Jr.,* for Aurela Shearer.

THOMAS, *P.J.,* August 3, 1988 — This is a petition for declaratory judgment filed by First National Bank of Pa., administrator C.T.A. of the estate of Harold Arden Shearer, requesting court resolution of the problem created by the widow's election to take against her late husband's will.

## PERTINENT FACTUAL BACKGROUND

Harold Shearer at age 75 married Aurela Alexander, age 75, on August 15, 1982. It was Harold's third marriage and Aurela's second. Harold died May 29, 1987 and his only next of kin were his wife Aurela and a son, John H. Shearer. Harold left a holographic will dated March 19, 1984, leaving wife Aurela Shearer $30,000 and the rights to occupy the marital home for life. The balance of his estate was bequeathed to son John. On October 22, 1987, Aurela filed a declaration to take against the will under the Decedents, Estates and Fiduciaries Code, 20 Pa.C.S. §2203. Harold's estate consisted of some $134,000 in probate assets, plus some $117,000 in jointly held assets with son John. The jointly held assets with son John create the problem for resolution, as all except one certificate of deposit ($4,000) were placed in joint names of father and son *prior to* the marriage of Harold and Aurela.

Aurela's contention is that 20 Pa.C.S. §2203(a)(3) confers upon her the right to "take against the will," and claim one-third of the total value of some of the

jointly held assets and one-third of one-half of others. Section 2203(a)(3) reads as follows:

"§2203. Right of election; resident decedent —

"(a)*Property subject to election* — When a married person domiciled in this commonwealth dies, his surviving spouse has a right to an elective share of one-third of the following property:

"(3) Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his own benefit."

We note the definition of "conveyance" in section 2201 is a broad one, and "means any act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation."

The son's posture is that only conveyances into joint ownership *during marriage* are subject to the widow's election and 2203(a)(4) is controlling.

"(4) Property conveyed by the decedent during the marriage to himself and another or others with right of survivorship to the extent of any interest in the property that the decedent had the power at the time of his death unilaterally to convey absolutely or in fee."

There is no dispute that a joint certificate of deposit in the joint name of father and son dated May 1, 1984, in the amount of $4,000 with First National Bank of Pa. is subject to 2203(a)(4) and subject to the widow's election.

## LEGAL ISSUE

The clear and simple issue for court resolution is whether any of the jointly held father and son assets

(excepting the above-noted $4,000 C.D.) are includable for the purpose of calculating the widow's share under section 2203.

## DISCUSSION

The elective share statute applicable in this case was enacted April 18, 1978, and became effective June 18, 1978. This statute is patterned after the Uniform Probate Code, U.L.A. 2-201, 202. However, Pennsylvania did not enact the complex "Augmented Estate" provisions contained in the Uniform Code 2-202(2). The Uniform Code in 2-202(1) permits only transfers of the deceased made *during the marriage* to be subject to the surviving spouse's one-third elective share.

The Pennsylvania statute follows the Uniform Probate Code in this regard in 2203(a)(4).

The Pennsylvania law prior to the 1978 amendment was found in the 1972 Act on 20 Pa.C.S. §§2508 and 6111(a). The latter section reads as follows:

*"In General* — A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor."

It should be noted that section 6111(a) did *not* specify whether conveyances and reserved powers

covered *all* conveyances made by the decedent or only those made *during the marriage*.

This issue came before our Supreme Court under the 1972 statute in *Estate of Kotz,* 486 Pa. 444, 406 A.2d 524 (1979). The Supreme Court postulated that the puspose of section 6111 "was to prevent a husband from indirectly disinheriting his wife through an inter vivos transfer while retaining control over the use and enjoyment of his property during his lifetime." The court further noted prior case law holding that, "the mischief to be remedied and the reason for the new law are clear (i.e. the 1972 law and its predecessors). Wives are being unfairly deprived of a share in their husband's personal property by a *transparent trust device which permitted a husband to retain control of his property* and at the same time legally deprive his wife of her just marital right therin." *Kotz, supra.*

In *Kotz,* decedent and his sister had acquired real estate as joint tenants with right of survivorship eight years *before* Kotz married his surviving widow Mary. Widow Mary contended section 6111 covered premarital transfers and the surviving joint tenant sister Virginia contended this section was only applicable to transfers made during marriage.

The Supreme Court ruled that 6111 applied only to "conveyances" made *during marriage* and rejected the widow's elective claim to the jointly owned real estate. Justice Roberts, in concurring, noted that the Supreme Court decision was made under a section that was repealed by the 1978 amendments, postulating that under 2203(a)(4) of the 1978 amendment only property conveyed *during the marriage* was subject to the widow's election. Roberts noted that (if) "the 1978 provision (were) applicable (it) clearly requires the same result we reach today under 6111." Whether Rob-

erts overlooked 2203(a)(3) or concluded it was inapplicable or whether 2203(a)(3) was added as a last-minute amendment unknown to Roberts is not known.

Obviously the purpose of 2203(a)(4) was to protect spouses from being denied a just share of their deceased spouses' estates. But did the legislature in 1978 so dramatically extend this protection that it created rights in each other's estates before the marriage, or indeed even before the prospective spouses knew each other? Joint interests created between friends, parents and children and grandparents and grandchildren are frequently created with no intention to defraud a prospective or unknown spouse-to-be. Was it the legislature's intent that a grandfather's benevolent "conveyance" creating a joint tenancy "college fund account" for a newborn grandchild be subject to a future wife's election to take against his will?

We note that the "official comments" following section 2203 in discussing 2203(a)(3) note:

"(3)*Revocable transfers* — This conforms with present Pennsylvania Law."

"Present Pennsylvania law" was then section 6111 and even though *Estate of Kotz, supra,* was contrary to the provisions of (3), the comment authors did not have the benefit of the Supreme Court's opinion in *Kotz,* since *Kotz* was not decided until October 1, 1979, some 18 months *after* enactment of the 1978 Act. Perhaps these "comments" were keyed to the lower court's decision of Judge Taxis filed in 1977, which decision interpreted section 6111 of the 1972 Act as permitting a surviving spouse to elect against property placed in joint name *prior* to marriage.

Was the intent of the legislature in 1978 to be interpreted to the end that 2203(a)(3) is merely a

somewhat condensed re-enactment of repealed 6111(a)? If so, then should we conclude that the *Kotz* decision is applicable to the "reworked" language of 2203(a)(3)?

## COURT'S CONCLUSION OF LAW

We think not. After all, the key to the Supreme Court's interpretation of section 6111 was simply that the court found no legislative intent to apply this section to *premarital conveyances*. *Kotz, supra*. It also must be remembered that 6111 talked of "a conveyance of assets" without impliedly or precisely delineating *when* the "conveyances of assets" had taken place. The legislature, in enacting 2203(a)(3), clearly and precisely spelled out that a spouse has elective rights in certain types of conveyances (made) "by the decedent during his lifetime. . . ." Thus, the amendatory language of 1978 is not subject to any doubt as to when the crucial "conveyance" was made. It was made during the deceased spouse's *lifetime, and* the deceased spouse, at the time of his death, had the power to revoke, consume, invade or dispose of the principal for his own benefit (2202(a)(3)), then that right was an asset of the deceased spouse up to the second before his death and subjected his interest in that property to his surviving spouse's election. If the legislature intended otherwise, our appellate courts will have to so decree, or the legislature itself adopt remedial legislation.

Having decided that property conveyed by the decedent during his lifetime and *before* marriage whereby a power is retained to revoke, consume, invade or dispose of all or a portion of the principal for his own benefit is subject to the surviving

spouse's election, we now turn to the assets subject to the widow's election. These joint assets held by father and son are attached to the original petition as Exhibit A, and by stipulation of counsel, the actual paper documents were copied and filed April 23, 1988, as part of the record in this case.

## Property Subject to Widow's Election

The following assets were held by Harold and son John as *joint tenants* and were acquired *before* marriage to the surviving widow.

(a) 96 shares of Core States Financial Corp. common stock.

(b) 240 shares of First National Pa. Corp. (The First National Bank of Pa.) common stock.

(c) 54 shares of FMC Corp. common stock.

(d) 125 shares of Alltel Corp. (Mid-Continent Telephone Corp.) five and one-half preferred stock series F.

(e) 315 shares Pennbank Corp. (The Pa. Bank & Trust Co.) common stock.

(f) 4 shares PNC Financial Corp. common stock.

(g) 160 shares Texas Eastern Corp. (Texas Eastern Transmission Corp.) common stock.

(h) 4,204,680 units of Affiliated Fund.

The following assets were held by Harold and John as *tenants in common* and were acquired *prior* to marriage.

(i) 36 shares Mobil Corp. common stock.

(j) $1,800 Mobil Corp. eight and one-half percent debentures 2001.

The following assets were registered in the name of Harold A. Shearer or John H. Shearer issued November 1981, *prior* to marriage.

(k) 30 individual $1,000 U.S. Savings Bonds Series HH.

The following asset registered in the name of Harold A. Shearer and John H. Shearer was issued May 1, 1974, *during* marriage.

(l) $4,000 Certificate of Deposit — First National Bank of Pa.

In regard to the joint tenancy assets, it is obvious that during the lifetime of the joint tenants either tenant by conduct, conveyance or partition may dissolve the joint tenancy to the end that the owners become tenants in common. See PLE Estates In Property 26. Thus, Harold Shearer at the time of his death had a right to consume or dispose of one-half of the joint tenancy assets. As we have interpreted 2203(a)(3), his surviving widow in exercising her "right of election" may claim a one-third interest in one-half of the joint tenancy assets listed in (a) through (h).

In regard to the tenants in common assets it is axiomatic that when a tenant in common takes possession or title to property it is presumed the tenants hold equal shares. A tenant in common without the consent of other co-tenants may dispose of his undivided interest, so long as he does not prejudice the rights of other co-tenants. Thus, Harold Shearer could have disposed of his one-half interest in the tenancy in common assets up to death. Therefore, his widow may exercise her "election" to take one-third of his one-half interest in assets listed aforesaid as (i) and (j).

The U.S. government bonds owned in "father or son" category are not controlled by legal joint ownership principles. With the wide circulation of this type of security it is only logical that ownership rights be established by Uniform Federal Regulations. We are cited Federal Code of Regulation, CFR

Ch. 11 (July 1, 1987 Ed.), which controls payment of said bonds ("Subpart H — General Provision for Payment"). Sections 353.35 through 353.39 are pertinent to resolution of the present issue and we quote 353.37.

"§353.37 Payment during lives of both co-owners—

"A savings bond registered in co-ownership form will be paid to either co-owner upon surrender with an appropriate request, and upon payment (as determined in section 353.43), the other co-owner will cease to have any interest in the bond. If both co-owners request payment, payment will be made by check drawn in the form, 'John A. Jones *and* Mary C. Jones.'"

We note 353.38 and 353.39 also authorize full payment to a single co-owner.

Thus, up to death Harold Shearer could have surrendered the bonds owned jointly with son and secured the total current value thereof. His surviving widow may claim against the bonds listed in (h) one-third of the full value of said bonds on the date of her spouse's death.

As noted previously there is no dispute that the widow has a right under 2203(a)(4) to claim her elective share in a $4,000 jointly owned certificate of deposit with First National Bank of Pennsylvania.

Under our interpretation of 2203(a)(4) the surviving widow has a claim under her election to a one-third interest in one-half of the date of death value of this certificate of deposit.

We note that at argument and in briefs it was pointed out that the aforesaid listed stocks were split or increased due to recapitalization *during marriage,* and that some 1221 shares of Affiliated Fund representing capital gains reinvested in additional shares were received *during marriage.* Under our

aforesaid interpretation of 2203(a)(3) and (4), these "additions" during marriage are immaterial as the total value of joint assets on the date of death establishes the asset base subject to the widow's election.

We enter the following

## DECREE NISI

And now, August 3, 1988, the court noting there is no dispute as to the pertinent facts, the property involved or the legal issue to be decided, hereby adopts and decrees the aforesaid pertinent factual background, legal issue, court's conclusion of law and property subject to widow's election as the factual and legal conclusions of this court. We hereby decree, that the surviving widow, Aurela Shearer has a right of election against jointly owned property in the estate of her late husband Harold A. Shearer to the extent determined in this decree under the caption "property subject to widow's election."

Unless exceptions are filed within 20 days of the date of filing this decree nisi, the decree nisi will become a final decree in declaratory judgment without further action by this court.